UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Russell J. Fenstermaker,    Civ. No. 16-363 (SRN/BRT)

    Petitioner,

v.

Kathy Halvorson, Warden, MCF-Faribault,[1]    REPORT AND RECOMMENDATION

    Respondent.

Roy G. Spurbeck, Esq., Minnesota State Public Defender, counsel for Petitioner.

James B. Early, Esq., Minnesota Attorney General's Office, and James P. Spencer, Esq., Olmstead County Attorney's Office, counsel for Respondent.

BECKY R. THORSON, United States Magistrate Judge.

    This matter is before the Court on Russell J. Fenstermaker's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. No. 1.) Fenstermaker was charged with one count of first-degree criminal sexual assault and two counts of third-degree sexual assault in Olmstead County District Court. *See State v. Fenstermaker*, No. A13-

---

[1] The petition names Tom Roy, Minnesota Commissioner of Corrections, as the Respondent in this matter. However, the correct respondent in an action under 28 U.S.C. § 2254 is typically the warden where the petitioner is being detained. Rule 2(a), Rules Governing Section 2254 Cases ("If the petitioner is currently in custody under a state-court judgment, the petition must name as respondent the state officer who has custody."); 28 U.S.C. § 2242 (stating that an application for a writ of habeas corpus shall allege "the name of the person who has custody over him"). Petitioner is currently confined at MCF-Faribault. (*See* Doc. No. 1, Habeas Pet. 2.) Therefore, Kathy Halvorson, Warden at MCF-Faribault, should be substituted as the Respondent in this action.

1082, 2014 WL 4290318, at *1 (Minn. Ct. App. Sept. 2, 2014).[2] After a jury was chosen and sworn, the trial court declared a mistrial due to a back injury suffered by the prosecutor. *Id.* at *2. A different, newly-empaneled jury acquitted Petitioner on the first-degree assault charge, but convicted on both third-degree charges. *Id.* at *3. The trial court sentenced Petitioner to concurrent sentences of 117 months and 131 months. (Doc. No. 1, Habeas Pet. 2.) On appeal, the Minnesota Court of Appeals acknowledged that this was "a close case," but found that the "district court did not abuse its discretion in declaring a mistrial due to a manifest necessity over appellant's objection, where the assigned prosecutor suffered an unanticipated and disabling back injury after the jury had been sworn and where the district court saw no reasonable alternative after careful consideration of the overall facts and circumstances." 2014 WL 4290318, at *6.

Petitioner brings one claim in this action under 28 U.S.C. § 2254; he argues that his second trial and conviction violates the Double Jeopardy Clause of the United States Constitution. (Habeas Pet. 6.) For the reasons stated below, this Court recommends that the petition be denied.

I.    **Background**

In early 2004, Petitioner started dating a woman named J.R. (Doc. No. 10-4 at 13.) J.R. had three children, including R., who was born on July 4, 1991. (*Id.*) Petitioner and

---

[2]    The facts set forth in the opinion by the Minnesota Court of Appeals are presumed correct in these proceedings. 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

J.R. were married in 2006. (*Id.* at 13.) In 2010, Petitioner and J.R. were separated. (*Id.* at 14.) In 2011, R. told her boyfriend that she and Petitioner previously had a sexual relationship which started in 2006 when she was fifteen. (*Id.* at 13–14.) R.'s boyfriend told the police, and R. confirmed her boyfriend's report. (*Id.* at 14.) The state brought charges against Petitioner in early 2012 for first-degree and third-degree criminal sexual assault.

Petitioner's trial began on November 14, 2012. *Fenstermaker*, 2014 WL 4290318 at *1. After a full day of voir dire, a jury of twelve and two alternates were selected and sworn. *Id.* Opening arguments were scheduled to begin on Friday, November 16, 2012, but the trial did not continue as planned because the assigned prosecutor was "unexpectedly incapacitated by a back injury." *Id.* The matter was continued to Monday, November 19, the week of Thanksgiving. *Id.*

On the morning of November 19, an attorney for the state sent an email to the district court, stating: "Unfortunately, [the assigned prosecutor's] condition has not improved sufficiently to allow her to conduct a trial this week. Accordingly, the state will be asking the court to continue the trial currently scheduled to recommence this morning. I will appear at 9:00 to request a continuance and answer any questions the court may have." *Id.* The state attorney appeared and explained to the court that "the pain of sitting in a chair like this in the courtroom . . . was such that really she wouldn't be able to concentrate on the proceedings." *Id.* Moreover, to the extent it was "bearable," it was only so "because of pain medication that she's on which affects her thought processes and really would prevent her from litigating a jury trial, especially in a serious case like

3

this." *Id.* The state attorney went on to explain that no other attorney in the office had time to prepare as substitute counsel, and argued that having a different prosecutor try the case would be unfair since the assigned prosecutor had developed a rapport with the witnesses and jurors. *Id.* Given that the case involved criminal sexual conduct, he argued that "the relationship that the prosecutor builds with witnesses, particularly the alleged victim, is very important." *Id.* The state attorney argued that there was a "manifest necessity" in justifying a mistrial, but he suggested in the alternative that the state was willing to discuss other options, including continuing the trial until the following week. *Id.* Petitioner's counsel did not object to a continuance, but did object to a mistrial. *Id.*

> The district court declared a mistrial, stating as follows:
>
> First of all, this jury's time of service ends this week, which is Wednesday of this week because of the Thanksgiving holiday. We did look at my calendar for next week, and I have matters that need to be attended to next week that are not jury trial related, so it creates some scheduling difficulties. I'm reasonably certain those could be overcome, but it strikes me that a mistrial should be granted, and I guess I would take [the state's] comments as a motion to declare a mistrial. The court was prepared in the absence of such a motion to declare a mistrial sua sponte for a couple of reasons: Number one, those enumerated by the state I think are valid. [The assigned prosecutor] is an experienced trial lawyer. She handles these types of cases. She has established rapport with the alleged victim and the alleged victim's family and also established rapport with the 14 jurors who have been sworn, and I think given the nature of this particular case, and the seriousness of it, that to require the state to have somebody simply jump in at this stage and try the case would not be fair to the State of Minnesota. I would take the same position if something had happened to [defense counsel]. I don't think that either one of those circumstances would be fair, given the nature of these alleged offenses and also the significant punishment that's attendant to any conviction.
>
> I think the high degree standard relative to the manifest necessity is satisfied in this case because [the assigned prosecutor's] back issue arose unexpectedly and suddenly, and she is simply unable to continue, and as I

4

> indicated, I think under the circumstances it is virtually impossible for another prosecutor to conduct the trial in this matter, and as I already indicated, I think the impact of a change in the prosecutors would be an unjust burden on the State of Minnesota . . .

*Id.* at *2. Retrial was scheduled for January 22, 2013. *Id.*

On January 11, 2013, Petitioner moved to dismiss the charges on the grounds of double jeopardy, arguing that jeopardy attached because the jury was sworn after the first day of trial. Petitioner urged the district court to reconsider its finding of manifest necessity because there were two reasonable alternatives to a mistrial that the district court failed to adequately consider. *Id.* First, the state could have substituted a different prosecutor because it was a "straightforward simple case." *Id.* Second, the district court could have continued the trial one week. *Id.* The assigned prosecutor, recovered from her back injury, argued that having substitute counsel try the case would have been unfair since she had a rapport with the victim and the jurors; that a continuance would not have been viable because the jury's term of service was ending when the trial would have resumed on November 26; and that there was no way of knowing at the time when she could have returned to work, "so the court would have been speculating whether or not I could have gone on the next week." *Id.* at *3. The district court denied the motion to dismiss for the following reasons:

> I didn't undertake my decision [on November 19] lightly. I did take into consideration the arguments that [appellant's attorney] made at the time and restates here today, and given the circumstances and what we knew about [the assigned prosecutor's] condition on November 19, along with all the other circumstances that I stated on the record, it would simply have been patently unfair to have required the state to proceed under those circumstances, and as I indicated on the record, had the situation been reversed, I would have determined that it was equally patently unfair for the

5

>defense to have had to continue. And with respect to the hindsight argument [that the assigned prosecutor was back at work on November 26], I didn't have that hindsight . . . on November 19, 2012. I had the situation as it existed at the time and think that that was the proper decision at that time, and I still believe it is the proper decision at this time. So I'm going to deny [appellant's] motion to dismiss.

*Id.*

After a two-day trial, Petitioner was acquitted of the first-degree charge, but convicted of two counts of third-degree criminal sexual conduct. *Id.* On appeal, the Minnesota Court of Appeals acknowledged that this was "a close case," but found that the "district court did not abuse its discretion in declaring a mistrial due to a manifest necessity over appellant's objection, where the assigned prosecutor suffered an unanticipated and disabling back injury after the jury had been sworn and where the district court saw no reasonable alternative after careful consideration of the overall facts and circumstances." *Id.* at *6. The Minnesota Supreme Court denied a petition for review on November 18, 2014. (Habeas Pet. 3.) On November 20, 2014, the clerk of the appellate court entered the judgment. (Doc. No. 1-1, Mem. in Support of Pet. 2.) Petitioner then brought a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in the United States District Court for the District of Minnesota.

## II.   Analysis

### A.   Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), habeas relief will not be granted with respect to any claim adjudicated on the merits in state court proceedings unless such adjudication resulted in a decision that was "contrary

to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2); *Davis v. Grandlienard*, 828 F.3d 658, 664 (8th Cir. 2016). Petitioner argues that the state court's rejection of his double jeopardy argument was an unreasonable application of clearly established federal law.

"Clearly established Federal law" includes "only the holdings, as opposed to the dicta, of [Supreme Court] decisions." *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015). An "unreasonable application" of those holdings "must be objectively unreasonable, not merely wrong; even clear error will not suffice." *Id.* (quoting *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014)). To satisfy this high bar, a habeas petitioner is required to show that "the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). "Adherence to these principles serves important interests of federalism and comity. AEDPA's requirements reflect a 'presumption that state courts know and follow the law.'" *Woods*, 135 S. Ct. at 1376 (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002)). On collateral review of state court convictions, "federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong. Federal habeas review thus exists as 'a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal.'" *Id.* (quoting *Harrington*, 562 U.S. at 102–03).

### B. Petitioner's Double Jeopardy Claim

As the Eighth Circuit has recognized, the principles of federal law governing Petitioner's claim are "well established. Under the Fifth and Fourteenth Amendments, a state may not twice place a defendant in jeopardy for the same offense." *Gouleed v. Wengler*, 589 F.3d 976, 981 (8th Cir. 2009) (citing *Benton v. Maryland*, 395 U.S. 784, 794 (1969)). In a jury trial, "jeopardy attaches when a jury is empaneled and sworn." *Martinez v. Illinois*, 134 S. Ct. 2070, 2074 (2014). Accordingly, the constitutional protection embraces

> the defendant's 'valued right to have his trial completed by a particular tribunal' . . . . Even if the first trial is not completed, a second prosecution may be grossly unfair. It increases the financial and emotional burden on the accused, prolongs the period in which he is stigmatized by an unresolved accusation of wrongdoing, and may even enhance the risk that an innocent defendant may be convicted . . . . Consequently, as a general rule, the prosecutor is entitled to one, and only one, opportunity to require an accused to stand trial.

*Arizona v. Washington*, 434 U.S. 497, 503–05 (1978).

"[R]etrial is not automatically barred," however, "when a criminal proceeding is terminated without finally resolving the merits of the charges against the accused." *Id.* at 505. "When the trial judge declares a mistrial over the defendant's objection, the Constitution permits a second trial if there was 'a manifest necessity for the [mistrial], or the ends of public justice would otherwise be defeated.'" *Gouleed*, 589 F.3d at 981 (quoting *United States v. Perez*, 22 U.S. (9 Wheat.) 579, 580 (1824)). The "manifest necessity" standard articulated by Chief Justice Story in *Perez* has endured in the case law and bears repeating in full:

> We think, that in all cases of this nature, the law has invested Courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances, which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes . . . . But, after all, they have the right to order the discharge; and the security which the public have for the faithful, sound, and conscientious exercise of this discretion, rests, in this, as in other cases, upon the responsibility of the Judges, under their oaths of office.

*Perez*, 22 U.S. (9 Wheat.) at 579–80.

The "manifest necessity" standard "does not require that a mistrial be absolutely necessary. Rather, it requires a 'high degree' of necessity." *Gouleed*, 589 F.3d at 981 (quoting *Washington*, 434 U.S. at 506). The trial court is afforded "broad discretion" in deciding whether such a necessity exists in a particular case. *Illinois v. Somerville*, 410 U.S. 458, 462 (1973); *Perez*, 22 U.S. (9 Wheat.) at 580. In reviewing the factual context that gave rise to the mistrial, courts are directed to "abjure[] the application of any mechanical formula." *Somerville*, 410 U.S. at 462. In particular, courts examine whether "less drastic alternatives were available" to declaring a mistrial. *Long v. Humphrey*, 184 F.3d 758, 761 (8th Cir. 1999). "If alternatives existed, then society's interest in 'fair trials designed to end in just judgments,' was not in conflict with the defendant's right to have the case submitted to the jury." *United States v. Shafer*, 987 F.2d 1054, 1057 (4th Cir. 1993) (internal citations omitted).

In Petitioner's case, the district court considered alternatives to a mistrial, including whether a substitute prosecutor could have tried the case and the possibility of a

one-week adjournment. *Fenstermaker*, 2014 WL 4290318, at *2–3. The appeals court deferred to the trial court's ruling that the substitute prosecutor option was "unreasonable" based on the following factors: (1) the assigned prosecutor had "rapport with the victim, which the state persuasively argues is important in a criminal-sexual-conduct case"; (2) the prosecutor had rapport with the jurors; (3) the prosecutor is an experienced trial lawyer with a history of prosecuting cases of this sort; and (4) if the roles were reversed, and defense counsel had fallen ill, "it would have been unfair to expect substitute counsel to represent" Petitioner. *Id.* at *5. The court of appeals recognized Petitioner's argument that "this was not a very complicated case, because there were few witnesses, the victim was an adult (and not a child), and there was no forensic evidence." *Id.* Because "the district court was in the best position to determine whether it would have been fair to the state to require a substitute attorney to try the case," however, the court "defer[red] to its determination." *Id.* (citing *Washington*, 434 U.S. at 508–09).

This ruling was not an unreasonable application of clearly established Federal law. As the Supreme Court has explained, "it is manifest that the key word 'necessity' cannot be interpreted literally; instead, contrary to the teaching of Webster, we assume that there are degrees of necessity and we require a 'high degree' before concluding that a mistrial is appropriate." *Washington*, 434 U.S. at 506. This "high degree of necessity" standard is not satisfied, for example, in "cases in which a prosecutor requests a mistrial in order to buttress weaknesses in his evidence." *Id.* at 507. This case, however, does not involve any hint of prosecutorial misconduct; there is no suggestion, for example, that the

assigned prosecutor faked her injury in order to gather more evidence or secure more time for trial preparation. *Id.* (explaining that "the strictest scrutiny is appropriate when the basis for the mistrial is the unavailability of critical prosecution evidence, or when there is reason to believe that the prosecutor is using the superior resources of the State to harass or to achieve a tactical advantage over the accused").

Second, the court of appeals considered whether the district court could have continued the trial for one week rather than declare a mistrial. *Fenstermaker*, 2014 WL 4290318, at *6. Even though the assigned prosecutor did, in fact, return to work one week later on November 26, the district court "did not have the benefit of hindsight when it declared the mistrial. At the time, the district court had no information concerning when the assigned prosecutor would be able to resume trying this or any other case." *Id.* Thus, the district court "did not abuse its discretion in determining that an additional continuance was not a reasonable option given the circumstances." *Id.* Finally, the court of appeals rejected the argument that the district court declared a mistrial due to "scheduling issues," which "seldom provide a compelling reason to declare a mistrial." *Id.* Instead, "[a]fter indicating that there may be scheduling issues, the district court stated that it was 'reasonably certain [the scheduling conflicts] could be overcome.' The record indicates that the district court relied primarily on other—and proper—considerations in declaring a mistrial." *Id.*

Once again, this ruling was not an unreasonable application of the Supreme Court's double jeopardy precedent. Petitioner argues, as he did before the court of appeals, that "a continuance was a reasonable alternative precisely because the court *did*

11

*not know* when the prosecutor would return to work." (Doc. No. 1-1, Mem. in Supp. of Pet. for Writ of Habeas Corpus 14 n.1. (emphasis added)); *see also Fenstermaker*, 2014 WL 4290318, at *6 ("Appellant clarifies in his reply brief that he is not arguing that 'the return of the injured prosecutor on Monday, November 26 proves error. What the prosecutor's return to work shows is the reasonableness and practical nature of [appellant's] request for a short continuance.'"). This argument misses the mark because the district court's rejection of a continuance as an alternative was premised on the initial conclusion that it was unfair to the state to have someone other than the assigned prosecutor try this case. A continuance would not solve this problem in the absence of some sort of assurance or reasonable basis to believe that the assigned prosecutor actually would have been available to try the case the following week. In this instance, Petitioner's "valued right to have his trial completed by a particular tribunal" was rightly "subordinated to the public's interest in fair trials designed to end in just judgments." *Wade v. Hunter*, 336 U.S. 684, 689 (1949).

    **C.**    **Conclusion**

    Trial judges are afforded "broad discretion" to determine whether there is a manifest necessity for a mistrial. *Somerville*, 410 U.S. at 462. The Minnesota Court of Appeals appropriately deferred to the district court's discretionary determination that a substitute prosecutor did not obviate the need for a mistrial given the experience of the assigned prosecutor and the type of case being tried. This ruling was not an "'extreme malfunction[] in the state criminal justice system[].'" *Harrington*, 562 U.S. at 102

(quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring)). This Court concludes Petitioner is therefore not entitled to habeas relief in federal court.

## III.   Certificate of Appealability

Finally, this Court notes that a § 2254 habeas corpus petitioner cannot appeal an adverse ruling on his petition unless he is granted a Certificate of Appealability ("COA"). 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b)(1); Rule 11(a), Rules Governing Section 2254 Cases. A COA should not be granted unless the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Minnesota Court of Appeals emphasized that Petitioner's double jeopardy claim presented a "close case." *Fenstermaker*, 2014 WL 4290318, at *6. The court of appeals also noted the absence of cases that address "the precise circumstances presented here." *Id.* at *5. Similarly, this Court was unable to find any cases addressing whether the manifest necessity standard is satisfied due to the unavailability of the assigned prosecutor, and the parties did not cite any in their submissions. Accordingly, this Court concludes that reasonable jurists could debate whether the manifest necessity standard was correctly applied in the instant case. Therefore, this Court will recommend that a COA should be issued.

# RECOMMENDATION

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Kathy Halvorson be substituted as the Respondent in this matter;

2. Petitioner's petition for a writ of habeas corpus (Doc. No. 1) be **DENIED**;

3. Petitioner's request for a certificate of appealability be **GRANTED**; and

4. This action be **DISMISSED WITH PREJUDICE**.

Date: March 17, 2017.

*s/ Becky R. Thorson*
BECKY R. THORSON
United States Magistrate Judge

# NOTICE

**Filing Objections:**  This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections.  LR 72.2(b)(2).  All objections and responses must comply with the word or line limits set for in LR 72.2(c).

**Under Advisement Date:**  This Report and Recommendation will be considered under advisement 14 days from the date of its filing.  If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.